UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60460-CIV-ROSENBAUM

A.R., by and through her next friend,
Susan Root, *et al*.,

    Plaintiffs,

v.

ELIZABETH DUDEK, in her official capacity
as Secretary of the Agency for
Health Care Administration, *et al*.,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon Plaintiffs' Motion for Consolidation of Related Cases [ECF No. 192], pursuant to Rule 42(a), Fed. R. Civ. P. The Court has reviewed the Motion, the filings supporting and opposing the Motion, and the other materials in the case file. For the reasons that follow, the Motion for Consolidation of Related Cases is granted.

***BACKGROUND***

Plaintiffs seek to have the related case of *United States of America v. State of Florida*, Case No. 13-CV-61576, consolidated with this case. According to Plaintiffs, the two cases have overlapping issues that must be resolved in combination in order to avoid possible conflicting orders and unnecessary multiplication of litigation.

A.      **The Instant Matter — Children's Case (Case No. 12-60460)**

The instant matter was filed by Plaintiffs T.H., L.J., A.G., A.C., A.R., C.V., M.D., C.M., and B.M.[1] who are children who have been diagnosed as "medically fragile" and who qualify for services through Florida's Medicaid program.[2] Plaintiffs T.H., L.J., and A.G., are children who have been placed in nursing facilities, while Plaintiffs A.C., A.R., C.V., M.D., C.M., and B.M. are children who live at home and assert that they are at risk of unnecessary institutionalization at nursing facilities.

On March 13, 2012, Plaintiffs filed a class-action lawsuit against various State of Florida Agency heads[3] as well as eQHealth Solutions, Inc. ("eQHealth"), the non-profit corporation that has contracted with the State of Florida to provide prior authorization of home health services. Plaintiffs filed their Second Amended Complaint, which is the operative pleading in this case, on August 23, 2012.

The Second Amended Complaint alleges that Defendants are denying Plaintiffs Medicaid services, including private-duty nursing services, as a result of the adoption of uniform policies, practices, and regulations to reduce private-duty nursing services. Plaintiffs further claim that Defendants have failed to provide medically necessary services in home and community settings to

---

[1] Plaintiff T.F. passed away on April 6, 2013. *See* ECF No. 147.

[2] A medically fragile child is one who is "medically complex and whose medical condition is of such a nature that he is technologically dependent, requiring medical apparatus or procedures to sustain life, *e.g.*, requires total parenteral nutrition (TPN), is ventilator dependent, or is dependent on a heightened level of medical supervision to sustain life, and without such services is likely to expire without warning." *See* ECF No. 62 at ¶ 2 (citing Rule 59G-1.010(165), Fla. Admin. Code).

[3] Secretary for the Agency for Health Care Administration ("AHCA"), Elizabeth Dudek; the State Surgeon General, formerly Harry Frank Farmer, Jr., currently John Armstrong, M.D.; and Deputy Secretary of the Florida Department of Health ("FDOH") and Director of Children's Medical Services ("CMS") formerly Kristina Wiggins, now Dr. Celeste Phillip.

2

Medicaid recipient children in Florida. More specifically, Counts I and II contend that Defendants have discriminated against Plaintiffs on the basis of their disability in the following ways:

    a.    Segregating or placing Plaintiffs and Plaintiff class members at risk of segregation and by failing to provide Plaintiffs and Plaintiff class members with appropriate community based services;

    b.    Denying Plaintiffs and Plaintiff Class members medically necessary services resulting in Plaintiffs and Plaintiff Class members' institutionalization or risk of institutionalization;

    c.    Denying Plaintiffs and Plaintiff class members access to existing community programs and requiring them to be confined in or to be at risk of being confined in segregated institutional settings in order to receive the care they require;

    d.    Administering the PASRR program in such a way that the institutionalized Plaintiffs and members of the institutionalized sub-class have been inappropriately admitted to nursing facilities; and

    e.    Administering the PASRR program in such a way that the institutionalized Plaintiffs and members of the institutionalized sub-class are not provided the necessary specialized services to which they are entitled while residing in nursing facilities.

*See* ECF No. 62 at 41-43.[4]

---

[4]"PASRR" is short for Pre-Admission and Resident Review. Two levels of PASRR screening and reviews exist – Level I and Level II. Level I screening determines whether individuals being considered for admission to a nursing facility have a mental illness or intellectual disability. *See* 42 C.F.R. § 483.128(a). Level II screening is performed on those individuals for which Level I indicates the existence of a mental illness or intellectual disability. According to Defendants, a PASRR Level II evaluation makes three specific determinations: (1) it confirms or rules out the presence of mental illness or intellectual disability; (2) it confirms the need for nursing facility services and the appropriateness of placement; and (3) it determines the need for specialized services. *See* ECF No. 117 at 11-12.

3

Further, Count III asserts that AHCA's definition of "medical necessity" (*i.e.*, Rule 59G-1.010(166))[5] is preempted by federal law and is invalid pursuant to the Supremacy Clause of the United States Constitution. In Count IV, Plaintiffs complain that "Defendants' regulations, rules, policies, customs, and practices, which limit the provision of medically necessary community-based services and support, as well as medically necessary specialized services, result in extended delays and outright denials of medically necessary care to the Plaintiffs and members of the Plaintiff class." ECF No. 62 at ¶ 326. Finally, in Count V, Plaintiffs allege that Defendants' PASRR program does not adequately screen applicants to nursing facilities to determine whether they have a mental illness or intellectual disability. According to Plaintiffs, as a result, many children with mental illness or intellectual disability that can be served in the community are wrongfully admitted to nursing facilities and are never provided a Level II PASRR evaluation and determination, as required by federal law.

Based on these allegations, Plaintiffs ask the Court to declare that Defendants' policies, regulations, actions, and omissions are unnecessarily institutionalizing Plaintiffs and Plaintiff class members or putting Plaintiffs at risk of being placed into segregated facilities, in violation of Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131-12165 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); the Medicaid Act, 42 U.S.C. §§ 1396-1396v ("Medicaid"); the Nursing Home Reform Amendments to the Medicaid Act, 42 U.S.C. § 1396r ("NHRA"); Early and Periodic Screening, Diagnostic, and Treatment Services, 42 U.S.C. § 1396d(r) provisions ("EPSDT Provisions"); and 42 U.S.C. § 1983.

---

[5]Under Fla. Admin. Code R. 59G-1.010(166), the term "medical necessity" includes those services furnished in a manner not primarily intended for the convenience of the recipient, caretaker, or the provider.

4

Plaintiffs also seek class-wide permanent injunctive relief under Rule 23(b)(2), Fed. R. Civ. P., requiring Defendants to refrain from segregating medically fragile and medically complex children in nursing facilities and to provide Plaintiffs with medically necessary Medicaid services in the most integrated setting appropriate in the community. Additionally, Plaintiffs request to enjoin Defendants from applying various rules and policies that place children at risk of institutionalization in nursing facilities. Ultimately, Plaintiffs seek injunctive relief requiring Defendants to

1. Provide children with disabilities the opportunity to receive services in the most integrated settings;
2. Provide private-duty nursing services that will allow children with disabilities to live in their homes and communities;
3. Implement a professionally-adequate screening and assessment process for children living in nursing facilities that will accurately identify children with developmental disabilities, including whether they can be appropriately served in the most integrated settings; and
4. For those children who are medically fragile or medically complex, ensure that they receive adequate nursing care based upon their medical needs and not based on their parents or caretakers' schedule, in the most integrated setting.

*See* ECF No. 62 at 45-46.

**B.     The Related DOJ Case (Case No. 13-61576)**

Plaintiff in the related case is the United States of America, and the defendant is the State of Florida. In a Complaint filed on July 22, 2013, the United States asserted a single claim against the State of Florida for violations of Tile II of the ADA stemming from what the United States deems to be the unnecessary segregation and institutionalization of children with disabilities, as well as the reduction of private-duty nursing and personal-care services provided to children who live in the community. More specifically, the United States contends that the State of Florida has limited the availability of many community-based services for children with significant medical needs.

5

Similar to the Children's Case, the United States asserts that the State of Florida has denied or reduced medically necessary services through its definition of "medically necessary." As noted above, under Rule 59G-1.010(166), Fla. Admin. Code R., only those services furnished in a manner not primarily intended for the convenience of the recipient, caretaker, or the provider qualify under the definition of "medical necessity." The United States claims that the State of Florida employs this definition to deny medically necessary services and to compel parents and other family members to provide care that is medically necessary. Additionally, the United States contends that the State of Florida requires children with significant medical needs to enroll in Prescribed Pediatric Extended Care services instead of private-duty nursing services. The results, according to the United States, are that a number of children have been placed or remain in nursing facilities and that families have not been provided with in-home services that would have enabled them to safely care for their children at home.

Moreover, the United States alleges that the State fails to provide sufficient reimbursement rates for in-home nursing services; fails to ensure sufficient capacity in Home and Community-Based Services ("HCBS") waiver programs; and fails to ensure that a sufficient capacity exists in non-institutional, out-of-home settings that are able to serve children with significant medical needs. With respect to the HCBS waiver program, the United States claims that many of the individuals on the list for services have waited for five years or more. And, the United States avers, children have waited in nursing facilities for years while waiting to be enrolled in the programs. Further, the United States alleges that the State of Florida has failed to adequately implement the pre-admission screening program PASRR. In this regard, the United States points out that a substantial number of institutionalized children have been admitted to nursing facilities without having first been fully screened through the PASRR program.

6

Overall, the United States alleges that the State of Florida violates the ADA by administering and funding its programs and service system for children with disabilities in a manner that fails to ensure the institutionalized and at-risk children receive services in the most integrated setting appropriate to their needs and by failing to reasonably modify policies, practices, and procedures to avoid such discrimination and unnecessary segregation. Based on these alleged violations, the United States asks for the Court to declare that the State of Florida has violated Title II of the ADA. Additionally, it seeks for the Court to enjoin the State of Florida from

1. Failing to provide appropriate, integrated community-based services and supports to the institutionalized and at-risk children consistent with their individualized needs;
2. Discriminating against institutionalized and at-risk children by failing to provide services and supports in the most integrated setting appropriate to their needs;
3. Failing or refusing to take such steps as may be necessary to restore, as nearly as practicable, the institutionalized children to the position they would have been in but for the discriminatory conduct; and
4. Failing or refusing to take such steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate the effects of Defendant's unlawful conduct.

Finally, the United States requests an award of compensatory damages to the institutionalized children for injuries that they suffered as a result of the State's failure to ensure compliance with the requirements of Title II of the ADA.

**B.    Plaintiffs' Motion to Consolidate**

In the Motion now before the Court, Plaintiffs contend that consolidation of the cases will conserve judicial resources and make the litigation of these matters more convenient for the parties and witnesses. Second, Plaintiffs assert that consolidation will ensure consistent adjudication of the issues that are common to the two complaints. Third, Plaintiffs note that both complaints allege that the same children have been inappropriately admitted into nursing facilities and have not been

7

properly screened under the PASRR program in violation of the Medicaid Act. Moreover, Plaintiffs contend that the State of Florida is reducing certain services which places these children at risk of institutionalization. Finally, Plaintiff argues that the relief sought in both cases is substantially the same.

In opposing the Motion to Consolidate, the State of Florida relies heavily on the Court's prior denial of the Motion for Class Certification in the Children's Case. According to the State of Florida, with the denial of class certification, the Children's Case is a case for individualized relief and concerns the medical histories of nine children. In contrast, the DOJ Case seeks systemic changes to the Florida Medicaid program because it challenges the policies of the State. In addition, the State of Florida emphasizes that Plaintiffs in the Children's Case seek declaratory and injunctive relief, while in the DOJ Case, the government seeks, in addition to such relief, damages to compensate children who were admitted to nursing homes. Next, the State of Florida asserts that because the claims differ, the nature of discovery in the two matters will be radically different. In this regard, the State believes that in the Children's Case, discovery will concern particularized facts related to the nine children, while in the DOJ case, discovery will relate to policies and procedures.

Finally, the State of Florida points out that the two cases are at different stages of development. In the Children's Case, Plaintiffs have until December 24, 2013, to renew their motion for class certification, and, pursuant to the Court's prior Order, class-wide discovery is stayed pending resolution of the renewed motion. The State of Florida posits that, allowing time for interlocutory appellate review, the question of class certification will not be wholly resolved for months. Because of this possible delay, the State of Florida urges, consolidation of the two cases would derail the prompt resolution of the DOJ Case. In short, the State of Florida argues that the progress of the Children's Case is too unpredictable to warrant consolidation of the cases.

For its part, Defendant eQHealth notes that both cases include one or more parties that are not a party to the other case. eQHealth agrees with the State of Florida's view that the Children's Case focuses on how specific determinations are made with respect to the medical necessity of each child. In contrast, eQHealth believes that the DOJ Case involves broader issues regarding the implementation of policies and services, including the funding of the Medicaid program as well as providing reimbursement for in-home nursing services. According to eQHealth, consolidating the cases would broaden the scope of the litigation in the Children's Case, which would be unfair to eQHealth because it performs medical-necessity reviews for only children in the community, and not those who are institutionalized. eQHealth emphasizes that it has no involvement in implementing and funding the State's Medicaid program, and likewise, has no involvement in the PASRR program or foster care system. In eQHealth's view, consolidating the two cases and broadening the issues will require it to attend depositions around the State that it otherwise would not have had to attend.

Finally, like the State of Florida, eQHealth points out the that the DOJ Case includes a request for compensatory damages for institutionalized children that would require individualized damage determinations, which is not permissible in a class action brought pursuant to Rule 23(b)(2). In this regard, eQhealth contends that the government's request for damages is inconsistent with the class that Plaintiffs in the Children's Case seek to have certified.

The United States does not oppose the requested consolidation. *See* ECF No. 212. And, to avoid a delay of the DOJ Case, the United States suggests, merits discovery in the consolidated cases could remain ongoing during the class certification proceedings in the Children's Case. *See id*.

### DISCUSSION

Rule 42(a), Fed. R. Civ. P., governs motions to consolidate civil actions and provides, "If actions before the court involve a common question of law or fact, the court may . . . consolidate the

9

actions." The rule is a codification of the court's inherent power to control the cases on its docket and to maximize economy of time and effort for itself, for counsel, and for litigants. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985). The Eleventh Circuit has encouraged trial judges to "make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id*. at 1495 (citations omitted).

A Court's decision under Rule 42(a) is purely discretionary. *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) (citations omitted); *Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 501 (S.D. Fla. 2002). In exercising its discretion, the Court must determine

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Hendrix*, 776 F.2d at 1495 (citations omitted).

Because the Children's Case and the DOJ Case involve common, complex issues of fact and law, the Court grants Plaintiffs' Motion to Consolidate. Although the Court notes that the issues in the DOJ Case are somewhat broader than those set forth in the Children's Case, the two cases are overwhelmingly similar in that they both allege that Defendants have improperly segregated or are attempting to segregate medically complex and medically fragile children residing in the State of Florida by failing to offer services necessary to keep these children in a home or community setting rather than in institutions. Both cases assert that Defendants deny children private-duty nursing services as a result of the adoption of policies, practices, and regulations. Both cases also contend that the State of Florida is administering its PASRR program in a way that medically fragile children

are denied necessary specialized services to which they are entitled. In addition, Plaintiffs in both cases argue that the PASRR program has been administered in such a way as to result in the institutionalization of children because of improper screening procedures. In this regard, for example, Plaintiffs in both cases contend that a number of institutionalized children were admitted to nursing facilities without first having been fully screened through the PASRR program.

Likewise, both cases challenge the State of Florida's use of the definition of "medical necessity" as set forth in Fla. Admin. Code R. 59G-1.010(166). More specifically, Plaintiffs in both cases assert that the definition limits covered services to those furnished in a manner not primarily intended for the convenience of the recipient, caretaker, or the provider. Both cases allege that the State Defendants use this definition to deny services to children as well as to compel family members to provide medically necessary care to children.

It is true that the DOJ Case involves other allegations regarding the funding of the Medicaid program. The DOJ Case also takes issue with the manner in which the State of Florida provides reimbursement for in-home nursing services and with the State's alleged failure to ensure sufficient capacity in HCBS waiver programs. But, these additional allegations, as well as those relating to other out-of-home settings do not persuade the Court to deny consolidation of the cases. Significantly, both cases center around Plaintiffs' contention that Defendants are unnecessarily segregating and institutionalizing children with disabilities and are also reducing private-duty and personal-care services provided to children who live in the community. In this regard, both lawsuits claim that Defendants have failed and continue to fail to provide medically necessary services in home and community-based settings to Medicaid-recipient children in Florida.

As a result of these alleged discriminatory policies, Plaintiffs in both cases seek declaratory and injunctive relief. Indeed, both cases request that the Court declare Defendants to be in violation

of Title II of the ADA due to their policies, regulations, actions, and omissions. Likewise, both cases seek injunctive relief requiring Defendants to provide children with disabilities with services in the most integrated settings. Additionally, both lawsuits ask that the Court require the State Defendants to address the deficiencies in its PASRR program and implement an adequate screening process that will accurately identify children with developmental disabilities. Both cases also seek injunctive relief ensuring that medically fragile and medically complex children will receive nursing services based on their needs and not based on the availability of another caretaker or family member.

Significantly, prior to filing the DOJ Case, the government filed amicus briefs in the Children's Case voicing its opinion with regard to many of the issues in that case. Indeed, the government even appeared at the hearing on the motion for class certification in the Children's Case. The same attorneys now appear on behalf of the government in the DOJ Case. Similarly, counsel for the State of Florida in the DOJ Case also appear on behalf of various State Defendants in the Children's Case. And, I am the presiding judge in both cases because both Judge Dimitrouleas and I found that, pursuant to Internal Operating Procedure 2.1500(c), the DOJ Case involved matters that were a material part of the subject matter of the Children's Case. All of these factors persuade the Court that consolidation of the two cases is appropriate.

Although the Court recognizes that the DOJ Case seeks an award of compensatory damages for the institutionalized children, this fact alone does not require the Court to deny consolidation. A Rule 23(b)(2) class, as sought by Plaintiffs in the Children's Case, is appropriate only if "the predominant relief sought is injunctive or declaratory." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). In this respect, monetary relief can be obtained in a Rule 23(b)((2) class action as long as the predominant relief sought is injunctive or declaratory. Courts have explained that monetary relief predominates in a Rule 23(b)(2) action unless is it "incidental" to the requested

12

injunctive or declaratory relief. *Id.* Monetary damages are incidental when class members automatically would be entitled to them once liability to the class as a whole is established, and awarding them would not entail complex individualized determinations. *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (Mar. 27, 2012) (citing *Murray*, 244 F.3d at 812).

Here, the damages sought by Plaintiff in the DOJ Case do not satisfy the criteria for being "incidental." This is so because in order to make the determination as to the amount due to each institutionalized child for injuries suffered, an individualized determination would need to be made. The fact that the damages sought by Plaintiffs in the DOJ Case are not incidental, however, does not preclude the Court from consolidating the two cases. The Court previously denied the motion for class certification in the Children's Case but permitted Plaintiffs to take additional discovery and to re-file the motion by December 24, 2013. At this juncture, a class has not been certified and it is not clear whether a class will be certified. If the Court declines to certify a class in the Children's Case, the Court must still determine the predecessor questions common to both cases before it may consider whether damages are due to the children and, if so, how much. And, if, on the other hand, the Court does ultimately certify the class proposed by Plaintiffs in the Children's Case, the fact that the government seeks damages on behalf of the institutionalized children does not necessarily impede the case. The Court may certify the class for purposes of liability but not for damages. Because similar determinations regarding liability are necessary in both the Children's Case and the DOJ Case, consolidation is appropriate.

Nor does the fact that the two cases are at different stages discovery preclude consolidation. Rather, the Court can refine the scheduling order if necessary. In the Children's Case, the Court previously stayed classwide discovery until the issue of class certification was resolved. *See* ECF No. 94 at 2. Merits discovery has already commenced in the DOJ Case and that discovery shall

remain ongoing during the resolution of the class-certification issue raised by Plaintiffs in the Children's Case. In this regard, consolidation of the cases will not "derail" the litigation of the government's claims as suggested by the State of Florida. Moreover, although eQHealth states it would be required to attend additional depositions if the cases were consolidated, the Court disagrees. eQHealth would not be required to attend any additional depositions that did not relate to the allegations made against it in the original Children's Case. Of course, if eQHealth decides to attend these depositions, it may do so. It, however, is not required to attend. In addition, nothing precludes eQHealth from attending depositions by telephone to minimize expense.

In short, the two cases shall be consolidated because of the overwhelmingly common issues of fact and law presented. Consolidation of these matters eliminates the unnecessary duplication of efforts in filings, hearings, and other litigation by the parties. Consolidation further promotes judicial economy and eliminates unnecessary repetition and confusion in the cases. The Court has weighed the risks of prejudice to the parties; inconsistent adjudications of common factual and legal issues; and the burden on the parties, the witnesses, and available judicial resources posed by multiple lawsuits. The Court has also considered the length of time required to conclude multiple suits versus a single one, and the relative expense to all concerned and finds that consolidation of the two cases in appropriate. Consequently, the Motion to Consolidate is granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Consolidation of Related Cases [ECF No. 192] is **GRANTED** as set forth herein. *A.R. et al., v. Dudek, et al.*, Case No. 12-60460-CV-ROSENBAUM, and *United States v. State of Florida*, Case No. 13-61576-CV-ROSENBAUM, are hereby consolidated with each other. The two cases shall proceed under Case No. 12-60460-CV-ROSENBAUM. All pleadings to be filed hereafter shall

14

bear the Case No. 12-60460-CV-ROSENBAUM, and no pleadings, motions, or other matters shall be filed in Case No. 13-61576-CV-ROSENBAUM. All future filings shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60460-CIV-ROSENBAUM

A.R., by and through her next friend,
Susan Root, *et al*.,

    Plaintiffs,

v.

ELIZABETH DUDEK, in her official capacity
as Secretary of the Agency for
Health Care Administration, *et al*.,

    Defendants.
_____/

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

STATE OF FLORIDA,

    Defendant.
_____/

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 6th day of December 2013.

                                                                       _____
                                                                       ROBIN S. ROSENBAUM
                                                                       UNITED STATES DISTRICT JUDGE

cc:    counsel of record